IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JIRI GASPAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 11 C 7465 |
| v. | ) | |
| | ) | |
| DS WATERS OF AMERICA, | ) | Suzanne B. Conlon, Judge |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Jiri Gaspar sues his employer, DS Waters of America ("DS Waters"), for discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (Count I); retaliation (Count II); and violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* (Count III). He claims DS Waters violated the ADA and FMLA by refusing to allow him to return to work after he went on medical leave. He further claims that DS Waters retaliated against him for filing a charge of discrimination with the Equal Employment Opportunity Commission by treating him less favorably after he returned to work. DS Waters moves for summary judgment. For the reasons below, the motion is granted.

## BACKGROUND

I. **Gaspar's Motion to Strike**

As an initial matter, Gaspar seeks to exclude the declaration of Michael Belcher, DS Waters' safety director, and all facts supported by his declaration. He contends Belcher is an undisclosed witness because he was not listed in DS Waters' initial disclosures or named in its interrogatory responses. DS Waters argues Belcher was named in document discovery and deposition testimony, and thus is not an undisclosed witness.

Rule 26 of the Federal Rules of Civil Procedure requires a party to provide the names of individuals likely to have discoverable information about the claims or defenses at issue to the opposing party and to supplement its disclosures and discovery responses. Fed. R. Civ. P. 26(a)(1), (e)(1). Rule 37 prevents a party from using a witness it failed to identify as required by Rule 26(a) or (e) to supply evidence in support of a motion or at trial. Fed. R. Civ. P. 37(c)(1). This exclusion is automatic and mandatory unless the failure to disclose was substantially justified or is harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). A court has broad discretion to decide whether to impose Rule 37 sanctions and may consider (1) the prejudice or surprise to the party against whom the evidence is offered, (2) the ability of the party to cure the prejudice, (3) the likelihood of disruption to the trial, and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Id.*

The court finds no failure of a duty to disclose on the facts presented. Although not named in DS Waters' initial disclosures or interrogatory responses, Belcher was known to Gaspar's counsel before litigation commenced. Belcher drafted the letter sent to one of Gaspar's medical examiners. Def. Facts Ex. 1, Belcher Decl. Ex. D at 12 (December 14, 2009 fax from DS Waters to Gaspar's counsel stating "[a]s we discussed last week, attached is a draft letter created by our Director of Safety, Michael Belcher, for Dr. Mehta"). Further, he was mentioned during the deposition of DS Waters' human resources director, who testified she consulted him regarding whether DS Waters could accommodate Gaspar's work restrictions. Def. Facts Ex. 8, Karolczak Dep. 74:13-75:22. DS Waters was not obligated to supplement or correct its prior disclosures or responses because Belcher was subsequently identified during discovery. Fed. R. Civ. P. 26(e) advisory committee's note (1993 amendments) (no duty to supplement "when a

witness not previously disclosed is identified during the taking of a deposition").

Even if there was a failure to disclose Belcher, it was harmless. Gaspar was previously aware of Belcher's role or became aware of his role with sufficient time to depose him. The deadline for completing discovery was extended by over a month, from September 21, 2012 to November 5, 2012, days after Belcher was identified by deposition testimony. Discovery was extended again through November 19, 2012. Gaspar claims he was not aware of the extensions, but notice was sent to counsel through the court's electronic notification system. Thus, there was no prejudice or surprise to Gaspar, and the motion to strike is denied. *See, e.g., Collins v. SET Enters., Inc.*, 891 F. Supp. 2d 1028, 1030 (N.D. Ill. 2012) (Bucklo, J.) (failure to disclose was harmless where party had time to raise the issue or depose witnesses); *Stolarczyk v. Senator Int'l Freight Forwarding, LLC*, 376 F. Supp. 2d 834, 843 (N.D. Ill. 2005) (Filip, J.) (affidavit in support of summary judgment opposition admitted where witness was identified in a deposition). Facts supported by the Belcher declaration not otherwise disputed are deemed admitted.

## II.   Facts[1]

The following facts are taken from the parties' Local Rule 56.1 statements. DS Waters provides bottled water to businesses and residences. Def. Facts ¶ 3. Gaspar works as an Industrial Transport Driver in Elgin, Illinois, at one of DS Waters' manufacturing facilities. *Id.* ¶ 5. He drives semi-trailers of finished goods from DS Waters' manufacturing facilities to its distribution facilities. *Id.* ¶ 4. On March 17, 2009, Gaspar experienced chest pains at work and was taken to the hospital by another DS Waters employee. *Id.* ¶ 20; Pl. Facts ¶ 5. He was

---

[1] Factual disputes are resolved by looking to the record evidence cited. Disputes supported by the record are resolved in Gaspar's favor, and he receives the benefit of all reasonable inferences. Facts not properly disputed or supported with record citations are deemed admitted. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

granted concurrent short-term disability and FMLA leave until June 8, 2009. Def. Facts ¶ 20; Pl. Facts ¶ 6. DS Waters' policy requires an employee to provide a doctor's release before returning to work. Pl. Facts ¶ 3.

On April 15, 2009, Gaspar contacted Michael Wells, his supervisor, about returning to work with limited hours. Wells told Gaspar limited hours should not be a problem but he needed to provide a note from his doctor. *Id.* ¶ 11; Def. Facts ¶ 21. On April 24, 2009, Gaspar gave DS Waters a note from Dr. Juliet Spelman, his psychiatrist, stating he was "medically cleared to drive a semi (CDL)." Def. Facts ¶ 22 (citing Ex. 4). She advised DS Waters that Gaspar could return to work on April 27, 2009 but he should work "no more than 10 (ten) hours per day." *Id.* When Gaspar met with Wells the same day, he was told there were concerns whether DS Waters could accommodate the ten-hour-per-day limitation. Pl. Facts ¶ 12. Gaspar's position requires him to travel long distances on interstate highways, and his travel time is contingent on variables such as traffic and weather. Def. Facts ¶ 23. On April 27, 2009, Meg Karolczak, DS Waters' human resources director, told Gaspar he needed a full release, with no restrictions, to return to work. Pl. Facts ¶ 9. She said "if more employees will have accommodation requests like [his], it will cause problems for the company." *Id.* ¶ 10.

On May 7, 2009, while DS Waters was considering Gaspar's work restriction, Gaspar sent an email requesting a "modified schedule as a reasonable accommodation under the ADA." Def. Facts ¶ 24 (citing Ex. 5). The next day, he filed a charge of discrimination with the EEOC alleging DS Waters was violating the ADA by preventing him from returning to work. *Id.* ¶ 25. On May 13, 2009, Karolczak requested additional information from Dr. Spelman regarding the basis for the accommodation request. *Id.* ¶ 26. Dr. Spelman responded that Gaspar was in

4

treatment for generalized anxiety disorder, panic disorder, and depression. *Id.* ¶ 27. She indicated Gaspar was disabled as defined by the ADA and that he could perform the essential functions of his job with an accommodation. Pl. Facts ¶ 14.

The first week of June 2009, Karolczak asked Gaspar to visit the Physician's Immediate Care medical clinic for a medical examination to renew his Department of Transportation ("DOT") medical certificate. *Id.* ¶ 16; Def. Facts ¶ 29. DS Waters requires its drivers to comply with the DOT regulations and possess a valid DOT certificate to drive. Def. Facts ¶ 12. On June 6, 2009, Gaspar was examined by a nurse practitioner at the clinic who issued him a DOT certification. *Id.* ¶ 30. However, on June 11, 2009, Dr. John Koehler, the clinic's medical director, revoked the DOT certification without meeting, speaking with, or treating Gaspar. Pl. Facts ¶¶ 17, 19. When Karolczak called the clinic to obtain a copy of Gaspar's DOT certification, she learned Gaspar was "temporarily disqualified" because he was on extensive medication that was not safe for operating a motorized vehicle or performing safety sensitive work. Def. Facts ¶¶ 31-32. Gaspar's examination report indicated he was taking Halcion (Triazolam), Alprazolam (Xanax), Trazadone, Cymbalta, and over-the-counter sleeping pills. *Id.* ¶ 32. All these medications can be sedating. *Id.* ¶ 50.

In August 2009, Gaspar visited Dr. Michael Osten, his family physician, after learning he performed DOT examinations. *Id.* ¶ 34; Pl. Facts ¶ 20. He issued Gaspar a DOT certification. Pl. Facts ¶ 20. Copies of the medical report and DOT certificate were sent to DS Waters. *Id.*; Def. Facts ¶ 34. To resolve the conflicting medical reports and DS Waters' concerns about his ability to safely operate a commercial vehicle, DS Waters and Gaspar agreed to have an independent DOT-qualified doctor examine him. Def. Facts ¶ 37. DS Waters suggested the

5

names of three doctors and offered to pay for the examination. *Id.* ¶¶ 37-38; Pl. Facts ¶ 23. Gaspar selected Dr. Sonia Mehta from the list. Def. Facts ¶ 38.

Dr. Mehta examined Gaspar in December 2009 but did not issue him a DOT certificate at that time. *Id.* ¶ 42. She recommended he complete neuropsychological testing to prove the medications he was taking would not affect his ability to drive a commercial vehicle. *Id.* ¶ 43. Gaspar contacted neuropsychological doctors in January 2010 but could not afford the tests. *Id.* ¶ 45; Pl. Facts ¶ 24. Instead, he visited Dr. George Pappas from DS Waters' list of approved physicians for another DOT certification examination. Def. Facts ¶ 45; Pl. Facts ¶¶ 23, 25. Dr. Pappas issued Gaspar a DOT certificate. Def. Facts ¶ 45.

DS Waters did not allow Gaspar to return to work after it learned he received a DOT certificate from Dr. Pappas. Rather, in June 2010, DS Waters agreed to pay for, and Gaspar agreed to complete, the neurophysical testing Dr. Mehta had recommended. The results of the testing indicated he was fit to drive. *Id.* ¶ 49; Pl. Facts ¶ 27. Dr. Mehta reexamined Gaspar on August 4, 2010 and, based on the test results and updated information on Gaspar's medications, issued him a DOT certificate. Def. Facts ¶ 53. On August 16, 2010, Gaspar returned to his position with the ten-hour-per-day limitation Dr. Spelman had recommended. *Id.* ¶ 54; Pl. Facts ¶ 28. Several times since returning Gaspar has been scheduled for routes that typically take longer than ten hours to complete, but he has not been disciplined for refusing to drive them. Def. Facts ¶ 55.

Gaspar claims he has been treated differently by the company since his return. He was denied his preferred vacation time twice, purportedly because the company did not have enough drivers to cover the scheduled loads and because Wells, his supervisor, was already scheduled for

6

vacation. *Id.*

¶ 61. He contends the real reason is that he lost his seniority because of his extended time away from work. Pl. Facts ¶ 35. He claims he was denied personal days, but DS Waters denies he was entitled to personal days for his time away. *Id.* ¶ 33; Def. Resp. to Pl. Facts ¶ 33. He states he was given a final warning for failing to notify the company of changes to his prescription medications as required by company policy. Pl. Facts ¶ 32. He claims he has been questioned several times about the length of time he spends performing daily work tasks and has been told the company believes he can perform his job more quickly, but he has not been disciplined. Def. Facts ¶¶ 57-58. He states he has been questioned more extensively when his truck camera sets off automatically. *Id.* ¶ 60. He contends the company was too aggressive when it investigated a citizen's complaint about his driving, but he was not disciplined. *Id.* ¶ 59. He says the company failed to reimburse him as promised after his GPS was stolen from the company's fenced security lot where his unlocked truck was parked overnight. *Id.* ¶ 62; Pl. Facts ¶ 34. Finally, Gaspar claims that he has been forced to use vehicles with substandard equipment on numerous occasions since August 2010 and that the company has not timely resolved his complaints about the condition of his vehicle. Def. Facts ¶ 65.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the record evidence reveals no genuine issue of material fact and DS Waters is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). DS Waters bears the initial burden of showing it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Because Gaspar has the burden of proof at trial, DS Waters'

burden is satisfied by demonstrating an absence of evidence supporting his case. *Id.* at 325. The burden shifts to Gaspar to present specific facts showing a genuine issue for trial. *Id.* at 322-24. A genuine issue of material fact exists if the evidence is sufficient to support a reasonable jury verdict in Gaspar's favor. *Collins v. Am. Red Cross*, --- F.3d ---, 2013 WL 856512, at *1 (7th Cir. Mar. 8, 2013). All facts and reasonable inferences are viewed in the light most favorable to Gaspar, but the court will not draw inferences supported by speculation or conjecture. *Id.*

## II.  Count I - ADA Discrimination

Gaspar claims DS Waters discriminated by refusing to allow him to return to work following his medical leave. To prevail on an ADA claim for disability discrimination, he must show he (1) is disabled, (2) is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) suffered an adverse employment action because of his disability. 42 U.S.C. § 12112(a); *Basden v. Prof'l Transp., Inc.*, --- F.3d ---, 2013 WL 1891292, at *2 (7th Cir. May 8, 2013). DS Waters disputes whether Gaspar was "qualified" for the position and asserts he failed to exhaust his administrative remedies.

### A.  Whether Gaspar was "Qualified" Under the ADA

DS Waters contends Gaspar was not "qualified" to drive a commercial vehicle because he lacked DOT certification. To be a "qualified individual" under the ADA, a plaintiff must satisfy all prerequisites for the position, including requirements as to education, experience, skills, and licenses. 42 U.S.C. § 12111(8); 29 C.F.R. § 2630.2(m). Only if the prerequisites are met does the court examine if the plaintiff can perform the essential functions of the job with or without accommodation. *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 974 (7th Cir. 2000) (affirming grant of summary judgment to employer where driver failed to obtain DOT certification). The ADA

allows an employer to apply qualification standards that are job-related and consistent with business necessity. 42 U.S.C. § 12113(a); 29 C.F.R. § 1630.15(b)(1). That an action is "required or necessitated by another Federal law or regulation" is a defense to a charge of discrimination. 29 C.F.R. § 1630.15(e).

The DOT promulgates the Federal Motor Carrier Safety Regulations, which establish minimum qualifications for persons who drive commercial motor vehicles and the minimum duties of motor carriers with respect to driver qualifications. 49 C.F.R. § 391.1. A driver is "physically qualified" if he "[h]as no mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his/her ability to drive a commercial motor vehicle safely." *Id.* § 391.41(b)(9). When a driver's ability to perform his normal duties has been impaired by a physical or mental injury or disease, he must be medically examined and certified as physically qualified to operate a commercial motor vehicle. *Id.* §§ 391.43, 391.45(c).

The DOT regulations limit the application of the ADA as a matter of law. *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 573 (1999) (affirming summary judgment for employer of driver who failed DOT vision standards). Courts within this circuit hold that an individual who has failed to obtain DOT certification is not "qualified" to drive a commercial vehicle and cannot assert an ADA claim. *See, e.g., Bay*, 212 F.3d at 974; *Ortiz v. Elgin Sweeping Servs., Inc.*, No. 10 C 0936, 2011 WL 1930693, at *4 (N.D. Ill. May 17, 2011) (Norgle, J.); *Green v. Pace Suburban Bus*, No. 02 C 3031, 2004 WL 1574246, at *11 (N.D. Ill. July 12, 2004) (Filip, J.); *Prado v. Cont'l Air Transp. Co.*, 982 F. Supp. 1304, 1308 (N.D. Ill. 1997) (Norgle, J.); *Long v. Chi. Transit Auth.*, 979 F. Supp. 1214, 1217 (N.D. Ill. 1997) (Alesia, J.).

Gaspar's position involves driving a commercial vehicle and is subject to the DOT

regulations, including DOT certification standards. In May 2009, DS Waters learned that Gaspar had been diagnosed with a mental condition that could potentially impair his ability to safely operate a commercial vehicle. DS Waters required DOT recertification to ensure Gaspar was physically qualified for the position. Neither party disputes that Gaspar was taking prescription medications that could be sedating during this time. Gaspar initially received DOT certification in June 2009, but the decision was overruled and the certification revoked by the clinic's medical director, who determined Gaspar's prescription medications disqualified him from performing safety sensitive work operating commercial vehicles. Gaspar therefore did not possess a valid DOT certification and was not "qualified" to assume his former driving position when his leave expired. As explained below, his ADA claim also is procedurally barred for failure to challenge the evaluation results in the appropriate forum.

B. **Failure to Exhaust Administrative Remedies**

Gaspar contends DS Waters discriminated against him by failing to reinstate him even though he received DOT certifications from Dr. Osten in August 2009 and Dr. Pappas in March 2010. DS Waters claims that Gaspar's claim is precluded because he failed to raise disputes about the medical examination results to the Federal Motor Carrier Safety Administration ("the Administration").

Disputes over medical evaluations concerning an individual's physical qualifications are subject to resolution by the Administration. 49 C.F.R. § 391.47. An ADA plaintiff who fails to raise disputes relating to medical evaluations to the Administration risks being precluded from raising these issues in federal court. *Prado*, 982 F. Supp. at 1308. *Accord Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 638 (8th Cir. 2003) (holding failure to exhaust DOT's administrative

remedies required dismissal of ADA claim). In *Prado*, a plaintiff with muscular atrophy in his right leg applied for a position as a driver with Continental Air Transport Co., Inc. *Id.* at 1306. During the DOT certification examination, the examiner concluded it was not advisable for the plaintiff to transport passengers in a commercial vehicle and determined he did not meet the minimum standards for DOT certification. *Id.* The plaintiff filed a charge of discrimination with the EEOC and, later, a complaint in federal court challenging the examination results and procedures. *Id.* In granting summary judgment to Continental, the court found that the plaintiff was precluded from challenging the physician's conclusions and examination procedures because he had not followed the administrative appeal process described by § 391.47. *Id.* at 1307-08.

Gaspar argues he could not raise a dispute to the Administration because he did not have two conflicting medical evaluations. This argument lacks merit. A conflict existed between Dr. Koehler's denial and Dr. Osten's grant of DOT certification. Gaspar contends he was qualified to resume work after he received DOT certification from Dr. Osten and Dr. Pappas. He overlooks Dr. Koehler's earlier denial of DOT certification and Dr. Mehta's initial conclusion further testing was necessary to ascertain whether he was able to safely operate a commercial vehicle. Gaspar's ADA claim challenges Dr. Koehler's and Dr. Mehta's medical conclusions and the procedures used to conduct their evaluation, particularly Dr. Koehler's decision to revoke DOT certification based on Gaspar's prescription medications without personally examining him. Gaspar's criticisms may be valid. However, it is undisputed that Gaspar did not raise these issues to the Administration. As in *Prado*, he is procedurally barred from raising them in federal court.

Accordingly, DS Waters is entitled to summary judgment as a matter of law on Count I.

Because Gaspar was not "qualified" under the ADA and failed to exhaust his administrative remedies, it is unnecessary to address his alternative argument that he was entitled to light duty.

### III. Count II - Retaliation

Employees who assert their right to be free from discrimination are protected from retaliation. In his amended complaint, Gaspar claims DS Waters retaliated against him after he returned to work in August 2010 because he complained of discrimination to the EEOC. He states he was asked to work hours in excess of his release, monitored more than other employees, treated adversely and held to a higher standard than other drivers, refused holiday time, and forced to use substandard equipment.

Gaspar may establish a *prima facie* case of retaliation directly or indirectly. *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 624 (7th Cir. 2012). Under the direct method, he must show (1) he engaged in statutorily protected activity, (2) he was subjected to an adverse employment action, and (3) a causal connection between the two. *Id.* DS Waters does not dispute Gaspar engaged in statutorily protected activity; it argues that the conduct alleged does not constitute an adverse employment action and that he has not shown the EEOC charge motivated the conduct.

Viewed in the light most favorable to Gaspar, the evidence is insufficient to show a causal connection between his complaint to the EEOC and the alleged retaliatory conduct. DS Waters has not admitted a retaliatory motive for its conduct after August 2010; Gaspar therefore must present a "convincing mosaic" of circumstantial evidence to establish a causal connection. *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 660 (7th Cir. 2013). Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, evidence similarly situated employees were treated differently, and evidence the employer's explanation is

pretext. *Id.* at 659-60.

A jury could not rationally find a causal link between Gaspar's EEOC charge and the alleged retaliation based on the record evidence. Temporal proximity is lacking. Gaspar filed his EEOC charge in May 2009 but the retaliatory conduct alleged in his complaint did not begin until August 2010, a full fifteen months later. The alleged retaliatory conduct is too far removed from the statutorily protected activity to raise an inference of causation. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) (five weeks insufficient); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven weeks insufficient). Gaspar argues for the first time that the retaliatory conduct includes DS Waters' failure to accommodate his disability or permit him to return to work prior to August 2010. This argument contradicts the amended complaint's clear allegations the retaliation occurred after his return to work. Am. Compl. ¶ 17. Gaspar did not move to amend these allegations and may not expand the scope of his retaliation claim in response to DS Waters' motion for summary judgment.

Nor does Gaspar's evidence establish he was treated differently than similarly situated employees. A "similarly situated employee" is an individual who shares the same supervisor and is subject to the same standards as the plaintiff. *Majors v. Gen. Elec. Co.*, --- F.3d ---, 2013 WL 1592072, at *8 (7th Cir. Apr. 16. 2013). Gaspar was the only Industrial Transport Driver employed by DS Waters at the Elgin facility. Although he asserts that he was treated differently than "other employees," he fails to show a similarly situated employee. He states, for example, that "other employees" were reimbursed when their personal items were stolen at work and that "other drivers" were placed on light duty, but he was not. These are conclusory statements devoid of details permitting a useful or meaningful comparison, and they are insufficient to

13

preclude summary judgment. *See Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 614-15 (7th Cir. 2011). The individuals he specifically identifies—"Jason," "Mike," and an "older gentleman"—were placed on light duty after suffering physical injuries. However, the record is scant even as to basic information regarding their names, titles, and supervisors, let alone sufficient to establish they were comparable to Gaspar in all material respects. Similarly, while Gaspar's claim implies DS Waters treated him less favorably than other employees by requiring him to use substandard equipment, he testified that "a lot of trucks" were in unsafe condition. Def. Facts ¶ 65; Gaspar Dep. 191:5-6. The truck he was given when he returned to work was in bad shape, but his replacement driver used the same truck. Gaspar Dep. 187:4-12. Thus, the evidence suggests that other drivers also used substandard equipment; an inference that Gaspar was singled out for less favorable treatment is purely speculative.

Finally, Gaspar has not provided evidence to demonstrate DS Waters' explanations for the alleged retaliatory conduct are lies. *Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006). He presents no evidence other than his own testimony to establish that he lost his seniority with respect to holiday time. Nor does he discredit DS Waters with evidence showing the company had a sufficient number of drivers to complete the loads scheduled during Gaspar's preferred vacation dates. With respect to his equipment concerns, he does not provide any evidence to contradict DS Waters' statements that his truck could not be immediately repaired, such as evidence the mechanics were available and able to perform the requested repairs. Gaspar's *prima facie* claim of retaliation fails under the direct method for failure to establish a causal connection with direct or circumstantial evidence.

To establish a *prima facie* case under the indirect method, Gaspar must show that he

(1) engaged in a protected activity, (2) performed his job satisfactorily, and (3) was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601-02 (7th Cir. 2011). As previously explained, the record is insufficient to establish the existence of a similarly situated employee who was treated more favorably. Thus, he cannot prevail under the indirect method. *See Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004) (plaintiff's failure to satisfy any element of the *prima facie* case under the indirect method is fatal to his retaliation claim).

DS Waters is entitled to summary judgment on Count II.

## IV. Count III - FMLA Violation

The Family and Medical Leave Act allows employees to take up to twelve weeks of leave in a twelve-month period when a serious health condition renders the employee unable to perform his job. 29 U.S.C. § 2612(a)(1); 29 C.F.R. § 825.113(a). The employee generally is entitled to return to his former position or to an equivalent position after his period of leave expires. 29 U.S.C. § 2614(a)(1); *Mitchell v. Dutchmen Mfg., Inc.*, 389 F.3d 746, 748 (7th Cir. 2004). An employer violates the FMLA by interfering or restraining an individual from exercising or attempting to exercise these rights. 29 U.S.C. § 2615(a)(1).

Gaspar contends DS Waters violated his right to reinstatement under the FMLA by failing to allow him to return to work after Dr. Spelman concluded he was fit to drive a commercial vehicle. To prevail, he must establish that (1) he was eligible for the FMLA's protections, (2) DS Waters is a covered employer, (3) he was entitled to leave, (4) he provided sufficient notice of his intent to take leave, and (5) DS Waters denied him FMLA benefits to which he was

15

entitled. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). The last element is disputed.

The right to reinstatement under the FMLA is not absolute. *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001). An employee who is unable to perform an essential function of his job has no right to reinstatement. 29 C.F.R. § 825.216(c). The employee may be required to obtain certification from a health care provider before resuming work. 29 U.S.C. § 2614(a)(4). Moreover, the FMLA acknowledges that the ADA may govern the employer's obligations regarding reinstatement. 29 C.F.R. § 825.216(c). Specifically, the FMLA provides that, under the ADA, the employer may require medical examinations performed by the employer's health care provider that are job-related and consistent with business necessity. *Id.* § 825.312(h).

As previously discussed, Gaspar's driver position was subject to DOT regulations requiring medical examination and certification to show he was physically qualified to operate a commercial vehicle. The DOT regulations limit the application of the ADA as a matter of law. Nothing in the FMLA's text or legislative history indicates the right to reinstatement supersedes these federal laws and regulations. *See* S. Rep. No. 103-3, at 31 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 33 (explaining that the FMLA was not meant to supersede other valid laws that, "for reasons such as public health, might affect the medical certification required for the return to work of an employee who had been on medical leave"). Thus, DS Waters was allowed to require Gaspar to obtain DOT certification before returning to work. Gaspar's argument that Dr. Spelman's clearance precluded DS Waters from imposing the DOT regulations' more stringent certification requirements fails as a matter of law. *See, e.g., Byrd v. New Prime, Inc.*, No. 11-3076-OV-S-ODS, 2012 WL 651436, at *3 (W.D. Mo. Feb. 27, 2012) (Smith, J.) (awarding

summary judgment to employer on FMLA interference claim where physician concluded employee was not qualified to safely operate a commercial vehicle). The evidence is insufficient to create a reasonable inference that DS Waters failed to reinstate Gaspar because he exercised his right to take FMLA leave. DS Waters is entitled to summary judgment on Count III.

## CONCLUSION

For the reasons set forth above, DS Waters is entitled to summary judgment as a matter of law on Gaspar's ADA disability discrimination, retaliation, and FMLA claims. Gaspar's motion to strike the declaration of Michael Belcher is denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

May 22, 2013